813 P.2d 353

### Carolyn MILLER (Cutler), Plaintiff–Respondent,

v.

### Jay MILLER, Defendant–Appellant.

### No. 18800.

Supreme Court of Idaho,
Boise, March 1991 Term.

July 5, 1991.

Iver J. Longeteig, III, Boise, for defendant-appellant. Iver J. Longeteig III, argued.

Harry C. DeHaan, Twin Falls, for plaintiff-respondent.

BISTLINE, Justice.

In 1980 a decree of divorce entered ordering that Jay Miller (hereinafter Jay) pay $100 per month child support to Carolyn Miller (hereinafter Carolyn), his wife and plaintiff in the divorce action. In 1986 the parties agreed to raise the child support amount to $250 per month. In 1988, Jay filed a Chapter 13 bankruptcy proceeding in the United States District Court for the District of Idaho. Carolyn responded by filing in the state district court an $1800 claim for unpaid child support. Ten months later she pursued collection of that claim, plus an additional accrued $300 of child support, by moving the state court for an order holding Jay in contempt of court for failing to pay child support as ordered.

After the date for a hearing on the motion was set, Jay moved the state court to vacate the contempt hearing, which motion he predicated on the grounds that he was under the protection of a bankruptcy stay order. On that motion being denied, and Jay being found in contempt, he appealed to the district court which affirmed the trial court. Jay then appealed to this Court, where the cause was retained for disposition.

On his appeal to the district court Jay contended that his post-petition earnings are part of his Chapter 13 estate, and under a Chapter 13 filing child support cannot be collected. The district court, Judge Meehl, ruled that the contempt proceeding was not precluded by the bankruptcy court stay order because "the language of the Bankruptcy Code does not protect post petition child support obligations even where the bankruptcy is filed under Chapter 13. . . ."

Judge Meehl explained that 11 U.S.C. § 103 allows Chapter 5 of the bankruptcy code to be applied to Chapter 13. 11 U.S.C. § 523(a)(5) provides that a discharge under 11 U.S.C. § 1328(b) does not discharge a debtor from a child support debt. Furthermore, 11 U.S.C. § 1328(c)(2) also makes § 523(a)(5) applicable to Chapter 13. The court concluded that under these statutory guidelines the child support claim fell outside the scope of the bankruptcy stay order.

■ In this Court, Jay argues that a stay order entered pursuant to 11 U.S.C. § 362 does cover the contempt proceeding. § 362(b) states: "The filing of a petition . . . does not operate as a stay— . . . (2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not property of the [bankruptcy] estate." The exemption applies only to the collection of support from property that is not property of the estate. 11 U.S.C. § 1306 states:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed

or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first; and

(2) *earnings from services performed by the debtor after the commencement of the case but before the case is closed,* dismissed or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

(Emphasis added.) Therefore, the child support exemption from the § 362 stay does not require that the stay be inapplicable in this case because the exemption only covers property that is not property of the bankruptcy estate. Because Jay's post petition earnings are part of the Chapter 13 bankruptcy estate, the child support exemption to the stay does not apply to them.

█ Jay further argues that had he filed a Chapter 7 proceeding he could not make the same argument as he now makes about the efficacy of the stay order, "as a support proceeding for post-petition support would have no effect on his present earnings, because they are not property of the [Chapter 7] bankruptcy estate, and by the express terms of § 362, are subject to enforcement of a support order." Appellant's Brief, 8. The Illinois Court of Appeals had made this distinction between Chapter 7 and Chapter 13. *In re Marriage of Lueck,* 140 Ill.App.3d 836, 95 Ill.Dec. 222, 489 N.E.2d 443 (1986). In the ordinary Chapter 13 case, the only assets of the estate are post-petition earnings, and to allow a state court to order these paid out to a third party would substantially hinder the debtor's ability to comply with the plan. Finally, Jay urges that the bankruptcy court should have the original jurisdiction to determine whether Carolyn can collect post-petition support from the property of the estate, and, should it be so convinced, it can issue an order lifting the stay as to this claim.

Carolyn argues that both the magistrate and the district court correctly found that the exemption in 11 U.S.C. § 523(a)(5)(B)

for "alimony, maintenance or support" puts child support matters outside the scope of the bankruptcy stay. She further argues that the Chapter 13 procedure is one for reorganization of debts which are then presently *existing* and that the Chapter 13 procedure does not, and cannot, include provision for all debts contracted for in the three year period of the proceedings. At oral argument it was strenuously argued on behalf of Carolyn's position that *In re Marriage of Lueck,* 140 Ill.App.3d 836, 95 Ill.Dec. 222, 489 N.E.2d 443, the case upon which Jay placed substantial reliance as supportive of his theory, involved a *pre-petition* debt for child support. We take cognizance of that distinction as applied to the instant case which involves a *post-petition* debt for child support.

Accordingly, we hold that the district court did not err in denying Jay's motion to vacate the contempt hearing and in finding Jay to be in contempt. We agree with the district court's rationale that since a child support obligation cannot be discharged under Chapter 13, Jay does not obtain any protection against a debt collection proceeding by reason of a bankruptcy court stay. 11 U.S.C. § 103; 11 U.S.C. § 523(a)(5); 11 U.S.C. § 1328(c)(2). We also agree with Carolyn's argument that the purpose of a Chapter 13 procedure is reorganization of debts *existing* and does not extend to post-petition debts such as the instant post-petition child support obligation. The decision of the district court is affirmed. We award costs, not inclusive of attorney fees, to Carolyn.

JOHNSON and BOYLE, JJ. concur.

McDEVITT, J. concurs in the result.

BAKES, Chief Justice, dissenting:

The issue in this case is not whether the child support obligation owed by appellant, Jay Miller, is dischargeable in bankruptcy. Non-dischargeability has nothing to do with whether appellant is entitled to the protection of the automatic stay granted by the bankruptcy laws.

Rather, the issue is whether or not the appellant can be held in contempt for not

applying his "earnings from services performed ... after the commencement of the case but before the case is closed" (11 U.S.C. § 1306) for any other purpose than that set out in the Chapter 13 bankruptcy plan. It is clear that under the Bankruptcy Code he cannot, and therefore he cannot be held in contempt.

It is true that under 11 U.S.C. § 362(b)(2) the automatic stay does not apply to any property *not* the property of the debtor's estate. However, in a Chapter 13 bankruptcy, the debtor's post-petition wages are property of the estate. 11 U.S.C. § 1306(a)(2) states, "Property of the estate includes ... earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title, whichever occurs first." A state court has no authority to determine how those "earnings from services performed by the debtor after commencement of the case" are disposed of. That is reserved to the bankruptcy court under the Bankruptcy Code. Therefore, the automatic stay is applicable, and the contempt order in this case must be set aside.

The court today cites no authority for its decision. The cases hold otherwise. *In re Marriage of Lueck*, 140 Ill.App.3d 836, 95 Ill.Dec. 222, 489 N.E.2d 443 (1986). Although the majority distinguishes *Lueck* on the basis that the debt involved there was pre-petition child support obligations rather than post-petition obligations, such distinction is immaterial because whether the stay is applicable depends upon whether the contempt order is directed to the debtor's post-petition wages which are a part of the bankruptcy estate. In its discussion the *Lueck* court states:

> Where the contempt is invoked as a sanction for failure to pay a judgment or to compel the expenditure of money from a *bankrupt's estate*, the proceedings are not exempt from the automatic stay of section 362(a). ....
>
> ....
>
> ... Section 1306(a)(2) defines *property of the estate*, for purposes of a chapter 13

bankruptcy, to include earnings from services performed by the debtor after the commencement of the bankruptcy case but before the case is closed or dismissed. Therefore, while section 363 does not bar a proceeding against non-estate property to collect arrearages in child support, by the definition of property of the estate in section 1306(a)(2) there is little or no non-estate property against which to proceed and, therefore, the trial court should have granted defendant's motion to stay the prior contempt order against property of the estate.

449 N.E.2d at 444–445 (emphasis added).

Under Chapter 13 of the Bankruptcy Code the debtor files a plan to which all his "disposable income" must be applied. See, 11 U.S.C. § 1325(b). Therefore, to the extent that the district court's contempt order requires the bankrupt to pay his post-filing earnings from services in any manner other than as provided in the Bankruptcy Code, the state court violates the supremacy of the bankruptcy court order.

There are alternatives that are available to the respondent for collection of the child support. The court in *In re Adams*, 12 B.R. 540 (Bankr.Utah 1981), stated:

> [A]lthough the ex-spouses's collection action is initially held at bay by the breadth of the Section 1306 estate, once confirmation occurs, a more equitable balance is struck between the needs of the debtor to rehabilitate himself and those of his dependents seeking lawful support.
>
> ....
>
> At this point [confirmation], she has the right to proceed against the wages of the debtor in the amount they exceed the payments to the trustee under the plan and may further proceed against any property claimed as exempt which is not being used to fund the plan, and any other property which has likewise been retained by the debtor and is not necessary to the execution of the plan as proposed.

12 B.R. at 542–543.

Additionally, the court of *In re Denn*, 37 B.R. 33 (Bankr.Minn.1987), stated:

The rights of obligee spouses will be protected under the Code. Congress, in writing the Code, and the courts, in interpreting it, have given great deference to those owed alimony, maintenance, and support by bankrupt debtors. See e.g., Section 362(b)(2), Section 532(a)(5), and Section 1328(a)(2) which except these marital debts from discharge.

37 B.R. at 36.

The drafters of the Bankruptcy Code struck a balance among the competing policies relating to the debtor's creditors, including the obligee spouse. The district court's order compelling payment of post-petition wages to the obligee spouse through its power of contempt disrupts the balance set out in the Bankruptcy Code. Therefore, the contempt order violates the bankruptcy stay order. The order of contempt entered in this case should be reversed.